## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

KARL ALEXANDER BRUMMER,

<em>Plaintiff</em>,

v.

COINBASE, INC., and AMERICAN
BANKERS INSURANCE COMPANY OF
FLORIDA,

<em>Defendants</em>.

Civil Action No.:  23-cv-81

**COMPLAINT**

Karl Alexander Brummer, Plaintiff herein, by his attorneys, alleges and complains of Defendants as follows:

### PRELIMINARY STATEMENT

1.     Karl Alexander Brummer ("Plaintiff or "Mr. Brummer") is a victim of assault and theft.

2.     On January 17, 2022, two perpetrators attacked Plaintiff and stole Plaintiff's mobile phone while it was unlocked.

3.     Within an hour of stealing the phone, the perpetrators accessed the Plaintiff's Coinbase account and executed seven (7) fraudulent and unauthorized transfers of $3,500 each, totaling $24,500 out of his Coinbase Account to an account that is unknown to the Plaintiff (the "Stolen Funds").

4.     Plaintiff immediately and repeatedly disputed the Stolen Funds with Defendant Coinbase, Inc. ("Defendant Coinbase") and Defendant American Bankers

Insurance Company of Florida ("Defendant Assurant").

5.      Despite its obligation under Federal and state laws to promptly credit Plaintiff's account in full, Defendant Coinbase has refused to credit Plaintiff's account for the Stolen Funds.

6.      Despite their obligation under their own Cash Recovery Endorsement policy, Defendant Assurant has refused to reimburse Plaintiff for the Stolen Funds.

7.      Plaintiff brings claims against Defendant Coinbase for violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA") and Minnesota Uniform Commercial Code Article 4A ("MNUCC"), and against Defendant Assurant for violations of Breach of Contract and Bad Faith Denial.

## JURISDICTION AND VENUE

8.      The Court has federal-question jurisdiction under 15 U.S.C. § 1693m(g).

9.      The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

11.     Defendants transact business in the State of Minnesota.  Defendants are registered to conduct business.  Defendant Coinbase has an appointed registered agent in the State of Minnesota and Defendant Assurant has an appointed registered agent in the State of Florida.

**PARTIES**

12.    Plaintiff is a natural person and citizen of Minnesota residing in Minneapolis, Minnesota.

13.    Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6). Plaintiff's account with Defendant Coinbase was used for personal, family, or household purposes.

14.    Defendant Coinbase is "financial institution" formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

15.    Defendant Coinbase's headquarters are in San Francisco, California.

16.    Defendant Assurant is an "insurance company" under the laws of Minnesota.

17.    At all relevant times, Defendant Assurant acted as Plaintiff's insurance provider for the Stolen Funds.

**FACTS**

18.    On January 17, 2022, Plaintiff was attacked and mugged by two (2) perpetrators while walking down the street in Minneapolis.

19.    During the incident, the perpetrators, despite Plaintiff fighting back, were able to get away with Plaintiff's mobile phone.

20.    Later, on the same day, Plaintiff started receiving email confirmations about unauthorized transactions from his Coinbase account.

21.    Plaintiff immediately contacted Defendant Coinbase to report the incident.

22.     Defendant Coinbase replied to Plaintiff's fraud claim on January 17, 2022, confirming that they disabled Plaintiff's account, however, seven (7) unauthorized transactions had already been processed.

23.     Specifically, the perpetrators successfully transferred seven (7) unauthorized transactions of $3,500 each, totaling $24,500, from Plaintiff's Coinbase account. They did this by requesting to withdraw funds from the Plaintiff's US Bank checking account which was linked to his Defendant Coinbase account. Plaintiff did not have the funds available in his US Bank checking account, but Defendant Coinbase fronted the money to the thieves anyways, who were then able to send the funds to their own checking account. Defendant Coinbase then sent emails to Plaintiff saying that since his checking account transfers failed, he now owed them $24,500 and if he did not pay they would "recover" the funds from him.

24.     Plaintiff replied to Defendant Coinbase's email that same day and requested that Defendant Coinbase cancel all recent transactions from his account.

25.     On January 20, 2022, Plaintiff reported the incident to the Minneapolis Police Department.

26.     On January 21, 2022, Defendant Coinbase sent Plaintiff another email stating that Defendant Coinbase was "working hard to quickly address this issue" and that they would "reach back out as soon as [they] have an update".

27.     That same day Plaintiff responded and informed Defendant Coinbase that Plaintiff had filed a police report regarding the incident and provided Defendant Coinbase with the case number.

28.     On January 24, 2022, Defendant Coinbase responded and asked Plaintiff for more information, to which Plaintiff responded immediately, in writing, providing answers to each of Coinbase's questions.

29.     Plaintiff noted in his January 24, 2022, communication that his Defendant Coinbase account indicated $31,000 of unauthorized withdrawals in one screen, and another screen indicated $24,500 in unauthorized withdrawals.

30.     Plaintiff provided the relevant screenshots showing the discrepancy.

31.     On January 25, 2022, Defendant Coinbase sent an email saying they had "successfully collected the funds" from the plaintiff's "recent failed transfer". Defendant Coinbase had seized $24,500 worth of his crypto assets to make up for the thieves failed US Bank transfers.

32.     On January 27, 2022, Plaintiff again communicated with Defendant Coinbase, trying to get someone from their support team to address the fraud.

33.     On January 27, 2022, Plaintiff filed an insurance claim on the Stolen Funds from his insurance provider, Defendant Assurant.

34.     On February 1, 2022, Plaintiff received another email from Defendant Coinbase saying that his bank notified Defendant Coinbase that one of the unauthorized transactions was reversed but failed to specify which transaction or the amount of the credit.

35.     On February 8, 2022, having determined that there remained $24,500 in unreimbursed charges stemming from the mugging, Plaintiff expressed his disapproval of

Defendant Coinbase's actions and requested documentation regarding the $24,500 in unauthorized transactions.

36.    On February 9, 2022, Defendant Coinbase sent another email to Plaintiff stating, "We understand that your account may have been compromised and unauthorized activity occurred. Customers are responsible for the security of their devices and passwords, and for any activity that occurs when those devices or passwords are compromised."

37.    On or about February 14, 2022, Defendant Assurant sent a letter denying Plaintiff's insurance claim on grounds that Plaintiff was seeking the "value of lost bitcoin, which is not a covered loss under the policy's Cash Recovery Endorsement."

38.    Plaintiff immediately appealed Defendant Assurant's decision in an email explaining that his claim was for an "unauthorized electronic fund transfer" which his policy covers, not recovery of the value of lost bitcoin, because the illegal activity that occurred was when the phone thieves tried to withdraw cash from the Plaintiff's US Bank checking account. They did not steal cryptocurrency directly.

39.    To date, despite its obligation under Federal and state laws to promptly credit Plaintiff's account in full, Defendants refused to return the funds that they took from Plaintiff's account.

40.    Most recently, Plaintiff provided additional information to Defendant Assurant on December 2, 2022, via email to Shawn Taylor (Defendant's Assurant claims examiners).

41.    In response Defendant Assurant wrongfully denied his claim again on

December 13, 2022.

## TRIAL BY JURY

42.     Plaintiff is entitled to, and hereby demands, a trial by jury.  U.S. Const. amend.

VII; Fed. R. Civ. P. 38.

## FIRST CLAIM FOR RELIEF

**(Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*.)**
**(Against Defendant Coinbase)**

43.     Plaintiff realleges each of the foregoing paragraphs of this Petition as if fully

set forth herein.

44.     Per the EFTA, Regulation E, and Regulation E's Official Interpretations,

Defendant Coinbase bears the responsibility for unauthorized transfers and withdrawals

such as the ones in question.

45.     Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers;

limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized
> transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained
> in such, unauthorized electronic fund transfer prior to the time the
> financial institution is notified of, or otherwise becomes aware of,
> circumstances which lead to the reasonable belief that an
> unauthorized electronic fund transfer involving the consumer's
> account has been or may be effected.

46.     This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. § 1693g(a)(2).

47.     The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>
> (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
>
> (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
>
> (ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

48.     Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations.  *See* Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E.  Thus, consumer behavior that may constitute

negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

49.     Defendant Coinbase's stated basis for denial (that customers, not Defendant Coinbase, are responsible for device security) is invalid under the EFTA.

50.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized.  15 U.S.C. § 1693g(b).

51.     Defendant Coinbase cannot meet their burden of proof here, where Plaintiff:

a)  Promptly disputed the transactions;

b)  Provided details regarding the theft of his phone;

c)  Provided a police report;

d)  Has no criminal history;

e)  Has no history of filing false disputes; and

f)  The thefts are inconsistent with Plaintiff's pattern of card use.

52.     Defendant Coinbase also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d).  *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

53.     Defendant Coinbase also violated the EFTA by failing to provide Plaintiff with notice of his right to request reproductions of all documents which Defendant Coinbase relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

54.    As a direct and proximate result of Defendant Coinbase's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

55.    Defendant Coinbase did not conduct a good faith investigation regarding the stolen funds.

56.    Defendant Coinbase did not have a reasonable basis for believing Plaintiff's account was not in error based on the evidence Plaintiff provided to Defendant Coinbase.

57.    Specifically, Defendant Coinbase's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that his account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

58.    As a direct and proximate result of Defendant Coinbase's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Minnesota State UCC § 336.4A)
### (Against Defendant Coinbase)

59.    Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     Pursuant to UCC § 336.4A-202(i), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

61.     UCC § 336.4A-202(ii) further provides:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if

> (a) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and

> (b) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

62.     Defendant Coinbase failed to establish and/or follow a commercially reasonable security procedure regarding Plaintiff's Account.

63.     Specifically, Defendant Coinbase's security procedure fails to flag and hold obviously fraudulent and unauthorized transactions such as the ones at issue here.

64.     The unauthorized transactions on Plaintiff's Account bore a series of characteristics that, when taken together, render the transactions suspect, and likely to be fraudulent.

65.     For example, and without limitation, the transactions:

a.   were entirely out of character with Plaintiff's history of account usage;

b.   drained the Account balance;

    c.  occurred within less than 8 hours;

    d.  occurred immediately after Plaintiff was accosted by the perpetrators; and

    e.  occurred without user PIN authentication, which had previously been activated continuously on Plaintiff's Account.

66.    Any commercially reasonable policy would have assessed this combination of troubling factors, flagged the transactions as suspect, and held or rejected the transactions as likely to be fraudulent.

67.    Indeed, Defendant Coinbase acknowledged the unauthorized nature of these transactions based on this same information (all of which was available to it at the time of the transactions) but did so only after it processed the transfers.

68.    Defendant Coinbase also did not process the transfers in good faith. Specifically, Defendant Coinbase's willful blindness to the many badges of fraud present here constituted bad faith acceptance of the unauthorized payment orders.

69.    In sum, Defendant Coinbase violated UCC § 336.4A-202 by accepting unauthorized payment orders in connection with Plaintiff's Coinbase account, failing to establish and/or follow commercially reasonable security procedures, and not process the transactions in good faith.

70.    Plaintiff is therefore entitled to a refund of the full amounts of the unauthorized payment orders, plus interest.

## THIRD CLAIM FOR RELIEF

### (Common Law Conversion)
### (Against Defendant Coinbase)

71.     Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Plaintiff had a possessory right to the funds in the Account.

73.     Under the circumstances set forth herein, the funds constitute personal property.

74.     Defendant Coinbase intentionally and without authority assumed and exercised control over Plaintiff's funds.

75.     Defendant Coinbase's dominion over the funds and interference with the funds—including allowing the transfer of the Stolen funds out of Plaintiff's Account—was in derogation of Plaintiff's rights, including but not limited to Plaintiff's right to use the funds as they saw fit and have the funds returned to them.

76.     Plaintiff demanded that Defendant Coinbase return the funds, but it has not.

77.     As a result of Defendant Coinbase's actions, Plaintiff has suffered actual damages, including but not limited to the amount of the funds converted.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract)
### (Against Defendant Assurant)

78.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

13

79.     Plaintiff and Defendant Assurant entered into a contractual agreement.

80.     In the Contract, Defendant Assurant agreed to "reimburse the association member for unrecoverable funds, exclusive of interest, directly drawn from or removed through an unauthorized electronic fund transfer from the association member's mobile device (smartphone), or other financial account that first occurs during the policy period, due to an act of fraud, embezzlement, theft, forgery or other data breach, which have not been recovered."

81.     As stated above, unknown perpetrators stole Plaintiff's money through unauthorized electronic fund transfers via Plaintiff's mobile device.

82.     Despite Plaintiff's claim on his insurance policy, Defendant Assurant denied Plaintiff's claim.

83.     Defendant Assurant had an obligation to Plaintiff to cover Plaintiff's claim.

84.     Defendant Assurant did not cover Plaintiff's claim and breached its contract with Plaintiff.

85.     As a direct and proximate result of Defendant Assurant's breach of contract, Plaintiff suffered damages and is entitled to actual damages and costs.

## SIXTH CLAIM FOR RELIEF

### (Bad Faith Denial)
### (Against Defendant Assurant)

86.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

87.     Defendant Assurant has put its own interests above those of Plaintiff and has,

in bad faith, failed or refused to perform its obligations under the Policy and under the laws of Minnesota.

88.     Defendant Assurant denied Plaintiff's claim in bad faith by, among other conduct, (a) failing or refusing to perform a fair objective, and thorough investigation of the claim as required by Minnesota Insurance Code; (b) asserting coverage defenses that were legal and/or factually invalid and thereby delaying resolution of Plaintiff's claim; (c) playing unduly restrictive interpretations of the Policy terms of the purpose of denying coverage due under the policy;  (d) failing to give Plaintiff's interests equal consideration their own; and (e) forcing Plaintiff to institute litigation to recover amounts due under the Policy.

89.     As a proximate result of the aforementioned bad faith conduct by Defendant Assurant, Plaintiff has suffered and will continue to suffer damages. These damages include interest on the withheld and unreasonably delayed payments due under the Policy and other special economic and consequential damages, of a total amount to be shown at trial.

90.     As a further and proximate result of Defendant Assurant's bad faith conduct, Plaintiff was compelled to retain legal counsel to obtain these benefits due under his Policy. Therefore, Defendant Assurant is liable to Plaintiff for those attorney fees, witness fees, and costs of litigation reasonably incurred by Plaintiff in order to obtain the benefits of the Policy.

91.     Defendant Assurant carried out its bad faith conduct with a willful and conscious disregard of Plaintiff's rights.

**WHEREFORE**, Plaintiff respectfully prays for relief as set forth below:

A.     An award of actual damages, including but not limited to the amount of the unauthorized charges (and all associated interest, fees and costs), and emotional distress;

B.     An award of statutory damages;

C.     An award of punitive damages;

D.     An award of treble damages;

E.     An order of restitution;

F.     Pre-judgment interest;

G.     Attorneys' fees, costs, and expenses;

H.     An order finding and declaring that Defendants' acts and practices as challenged herein are unlawful, unfair, and fraudulent; and

I.     For such other and further relief as the Court may deem just and proper.


Dated: January 10, 2023.

Respectfully submitted,

*/s/ Thomas J. Lyons, Jr.*
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #:  0249646
Carter B. Lyons, Esq.
Attorney I.D. #:  0403655
CONSUMER JUSTICE CENTER PA
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: 651-770-9707
Facsimile: 651-704-0907
tommy@consumerjusticecenter.com
carter@consumerjusticecenter.com

Daniel A. Schlanger
*(pro hac vice pending)*
SCHLANGER LAW GROUP, LLP
80 Broad Street, Suite 1301
New York, New York 10004
T: 212-500-6114
F: 646-612-7996
E:
dschlanger@consumerprotection.net

*Counsel for Plaintiff*

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF</u>

I, Karl Alexander Brummer, declare under penalty of perjury, as provided for by the laws

of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this 10th day of January 2023.

Karl Alexander Brummer